IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
|     *Plaintiff*, ) | Civil Action No: |
| ) | |
|     v. ) | |
| ) | Judge |
| William Lee, Governor of the State ) | |
| of Tennessee, in his official capacity; ) | |
| ) | Magistrate Judge |
| And, ) | |
| ) | |
| David Rausch, Director of the Tennessee ) | |
| Bureau of Investigation, in his official ) | |
| capacity; ) | |
| ) | |
|     *Defendants*. ) | |

**COMMPLAINT**

1. Plaintiff John Doe[1] brings this 42 U.S.C. § 1983 action alleging that Defendants have violated, and continue to violate, Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring requirements. Plaintiff seeks declaratory and injunctive relief against the Defendants.

**PARTIES**

2. Plaintiff John Doe is an adult resident of Hardin County, Tennessee.

3. Defendant William Lee is the Governor of the State of Tennessee.

---

[1] Plaintiff will be filing a motion to proceed under pseudonym and for protective order shortly after filing this complaint.

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are state officials whose offices are located in this district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

6. Plaintiff is a sixty-eight-year-old man.

7. Plaintiff is required under Tennessee law to be registered on Tennessee's Sex Offender Registry (T.C.A. § 40-39-201 et seq.) due solely to a single criminal case involving four convictions for child pornography-related offenses that were committed in 2001.

8. Solely due to Plaintiff's 2001 offenses, Tennessee law declares him "Violent Against Children" in perpetuity, and subjects him to lifetime[2] registration on the sex offender registry and a host of restrictions, obligations, and punishments.

9. The bulk of Tennessee's sex offender registration, monitoring, and enforcement laws were passed after Plaintiff committed his qualifying offenses.

### B. Tennessee's Sex Offender Registration and Monitoring Regime

10. In 1994, Tennessee passed its first ever sex offender registry law. However, this law required only that offenders register in a private law enforcement database.

---

[2] Because one of the victims of Plaintiff's cases was 11 years old at the time of the offense, Plaintiff is ineligible for removal from SORA under Tennessee's state law provisions. T.C.A. § 40-39-207(g)(2)(C).

11. Tennessee continued expanding the registry laws through the nineties, increasing reporting requirements and, eventually, making sex offender registrations public for those who had committed their offenses after July 1, 1997.

12. Tennessee continued periodically passing laws expanding its sex offender registration and monitoring regime, until in 2004 Tennessee passed sweeping new restrictions on convicted sex offenders hereinafter referred to as "SORA."

13. SORA imposed stringent registration and reporting requirements on statutorily defined "sexual offenders," "violent sexual offenders," and "offenders against children," and severely limited where sex offenders could live, work, and go.

14. SORA applied retroactively to past offenders, imposing its labels, restrictions, obligations, and punishments even where an offender's only qualifying offenses had occurred prior to SORA's enactment.

15. In the years since 2004, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

16. Under present law,[3] Tennessee's SORA regime requires the following affirmative obligations from Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration within forty-eight hours if Plaintiff relocates to a new municipality or county, even on a temporary basis for work or school;

    d. When in public, <u>always</u> carry his state-issued identification with him, which must have a sex offender designation on it.

---

[3] T.C.A. § 40-39-201 *et seq*.

17. Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI"), which makes the following information about Plaintiff public:

    a. Name

    b. Classification of "VIOLENT AGAINST CHILDREN"

    c. Status of "ACTIVE"

    d. Date of birth

    e. Full criminal history

    f. Residential address

    g. Race and gender

    h. Last date of information verification

    i. Most recent photograph submitted to TBI

    j. Driver's license and/or state identification number

    k. Physical description including height, weight, eye color, hair color, tattoos, scars, and marks

    l. Criminal history, including the date of all arrests and convictions, probation and/or parole status, and the existence of any outstanding warrants

    m. Address of Plaintiff's employer(s)

    n. License plate number and description of Plaintiff's vehicle(s)

18. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

    a. Working or residing within 1000' of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

b. Residing within 1000' feet of the victims from Plaintiff's criminal case, or any of the victims' family members; coming within 100' of the victims; or, contacting the victims without their consent.

c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

   i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

   ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other child care facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

   iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

d. Residing with two or more other convicted sex offenders;

e. Being alone with a minor in a "private area."

f. Residing with, or having an overnight visit in, a place in which a minor is present.

19. SORA authorizes the following additional optional punishments against Plaintiff:

a. Public libraries may ban Plaintiff from their premises;

    b. Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

    c. A municipality where Plaintiff resides may charge Plaintiff up to $50 per year toward the cost of its community notification system.

### C. Specific Impacts of SORA on Plaintiff

20. SORA's impositions, detailed at ¶¶ 16 – 19, have substantially interfered with Plaintiff's career, family, reputation, and overall enjoyment of life and will continue to substantially interfere so long as Plaintiff is subject to them.

21. Under current law, Plaintiff will continue to be subjected to these SORA impositions for the rest of his life.

22. SORA requires Plaintiff to report quarterly, and each time he reports he must sign his acknowledgment of the SORA rules. The rules are complex, and each time he reports it seems like there are new rules in place. Consequently, Plaintiff routinely feels anxiety that he could be arrested because of a rule change that he is not even aware of.

23. Plaintiff has to pay the TBI registration fees of $150 a year, or provide his personal tax information as proof he was unable to come up with the money due to financial strain or having no finances available.

24. Plaintiff takes care of his disabled sister, who loves to go to church and socialize. SORA makes it extremely hard for Plaintiff to accommodate his sister's needs. Due to SORA, Plaintiff has to arrange rides and things for his sister to attend events that involve children. Naturally, there are times that others find these requests burdensome, and do not want to help. This is hard on Plaintiff, as he loves his sister and takes a lot of pride in her care and making sure she's happy and stays active in the things she enjoys.

6

Case 3:23-cv-00996   Document 1   Filed 09/20/23   Page 6 of 10 PageID #: 6

25. Plaintiff is a skilled woodworker, and is able to sell his crafts for money. However, Plaintiff has missed out on opportunities due to not being able to attend craft fairs and vendor events, because most shows and events have children present. Plaintiff has also been unable to create social media pages that showcase his woodworking skills and items for sale due to being on the registry.

26. Plaintiff has a long-term significant other, who resides approximately two and half hours away in an urban area. SORA makes it hard for Plaintiff and his significant other to have a relationship, because his significant other's residence is near a SORA-prohibited zone. Plaintiff cannot stay with his significant other more than fourteen days per year, because SORA would require Plaintiff to register his significant other's address as a secondary address which would have negative implications for Plaintiff's significant other.

27. Plaintiff has friends who live out of town and in other states that he would love to visit for longer than a day or two, but due to registry limits this is difficult. A few of the friends that Plaintiff would like to visit live in popular towns that are tourist-type towns geared toward families with children – to visit these places would possibly put Plaintiff in a restricted area and violate him.

28. Plaintiff would love to go to public greenways, travel to the mountains, and enjoy going to state parks to go on hikes and kayak; however, due to SORA he is unable to do so.

29. Plaintiff would love to be able to go to the movie theater to watch a movie but again it is a restricted area due to SOR.

30. Plaintiff feels unable to go to some fast-food restaurants, because they have playgrounds on-site for children.

31. Plaintiff feels unable to go to the local library due to SORA.  Plaintiff would love to spend time at the library because he is especially interested in geneology research.

32. Although SORA does not explicitly prohibit church attendance, Plaintiff feels unable to attend the church his family has attended for over fifty years because there are so many children there and so many of the events are family-focused.

33. Plaintiff fears that when he travels he could be targeted by vigilantes because of his registry status.

34. Plaintiff routinely feels anxiety even going to permitted places that are oriented toward adults, because with the "88" code on his driver's license he faces a high risk of being asked to leave or being humiliated.   Plaintiff has missed many events that he would have otherwise attended with his significant other, in order to spare both of them the humiliation and anxiety of Plaintiff having to identify himself with his "88 code" driver's license at the establishment hosting the event.

35. Plaintiff's career has been seriously impacted by SORA.  Plaintiff is a skilled alarm system installer, and would have been able to do much more with this vocation if it were not for the registry.  Plaintiff has been unable to travel for larger subcontractor jobs because of SORA, and the requirement to register wherever whatever hotel would have stayed in as a secondary residence.

36. Although Plaintiff currently has stable housing, Plaintiff would like to be able to move to a larger home in the same area as his significant other.  However, SORA severely limits Plaintiff's housing options, and makes the task of making social connections to a new community seem practically impossible.

# CLAIMS FOR RELIEF

### COUNT I: EX POST FACTO VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION
### (42 U.S.C § 1983)

### (ALL DEFENDANTS)

37. Plaintiff hereby reincorporates paragraphs 1 – 36 by reference.

38. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

39. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

40. Plaintiff is entitled to declaratory and injunctive relief prohibiting Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

# REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That the Court grant a preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his 2001 offenses.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his 2001 offenses.

5. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his 2001 offenses.

6. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

7. That the court costs in this matter be taxed to Defendants.

8. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 429-4717 / F: (615) 229-6387
E: Kyle@relentlesslaw.com